# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Advanced Simulation Technology, Inc.                  :
200 Racoosin Dr., Suite 105
Aston, PA 19014                                       :
    Plaintiff,
                                  :    Civil Action, No. _____

    v.                                               :    COMPLAINT

Blue Photon Technology & Workholding              :    JURY TRIAL DEMANDED
  Systems, LLC
1002 Industrial Park Drive                            :
Shelby, MI 49455
    Defendant.

---

## COMPLAINT

### Jurisdiction and Venue

1.      This action for trade secret misappropriation, breach of contract, and trademark infringement is brought under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under Pennsylvania law of contracts.

2.      The United States District Court for the Eastern District of Pennsylvania has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and under 18 U.S.C. § 1836(c), and has pendant jurisdiction over the state law claims.

3.      Venue is conferred pursuant to 28 U.S.C. § 1391(b) and is proper.

**The Parties**

4.      Plaintiff, Advanced Simulation Technology, Inc. ("AST"), is a corporation

formed and existing under the laws of the Commonwealth of Pennsylvania and having an

address at 200 Racoosin Dr., Suite 105, Aston, PA 19014.

5.      Defendant, Blue Photon Technology & Workholding Systems, LLC ("Blue

Photon") is, on information and belief, a Michigan limited liability company having a business

address of 1002 Industrial Park Drive, Shelby, MI 49455.

**Background**

6.      AST is an engineering company located near Philadelphia, Pennsylvania that

provides engineering services including, but not limited to design, prototyping, fabrication and

software development to its clients.

7.      Blue Photon is a company that holds itself out as providing systems for holding

work items for the purposes of milling, turning, grinding, EDM, laser, inspection and assembly

applications in the aerospace, additive, robotics, job shops and medical machining industries.

8.      Blue Photon uses photo-activated adhesives to bond work items to fixtures.

9.      Blue Photon's photo-activated adhesives are cured by exposure to ultraviolet

light.

10.     On and after April 6, 2016, AST designed and developed a cable system for

delivering high intensity ultraviolet light in a controlled manner to precise locations (the "AST

Cable System"). The AST Cable System is comprised of cables having ultraviolet light emitting

diodes at one end, and a connector at the other end which is connected to a controller and power

2

supply. The controller is operated by software designed and developed by AST, and contains circuitry that was designed and developed by AST.

11.     The AST Cable System is reflected in AST's financial, business, scientific, technical, economic, and engineering information, including AST's patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, and codes (the "AST Cable System Information").

12.     At all relevant times, AST has taken reasonable measures to keep the AST Cable System Information secret, known only to AST, and to its employees and contractors who are under an obligation of confidentiality to AST.

13.     AST derives independent actual or potential economic value from the AST Cable System Information not being generally known to, and not being readily ascertainable through proper means by the public.

14.     The AST Cable System Information is a trade secret within the meaning of 18 U.S.C. § 1839(3).

15.     AST is the owner of the AST Cable System Information within the meaning of 18 U.S.C. § 1839(4).

16.     The AST Cable System is intended by AST for use in interstate or foreign commerce, and has actually been used in interstate commerce.

17.     On April 6, 2016, AST entered into a non-disclosure agreement (the "NDA") with Blue Photon, attached hereto as Exhibit A.

18.     The NDA provided in Section 2 that, "Upon request by Discloser, Disclosee will return all Confidential Information to Discloser."

3

19.     The NDA provides in Section 6 that the Discloser is "entitled to temporary and injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions to enforce" the NDA against breach or threatened breach of the NDA.

20.     The NDA provides in Section 9 that only courts located in the Commonwealth of Pennsylvania may hear actions related to the NDA.

21.     The NDA provides in Section 13 that the prevailing party, "shall be entitled to recover, in addition to money damages and injunctive relief, the costs of suit, including attorneys' fees actually incurred...".

22.     Pursuant to the NDA, AST disclosed the AST Cable System to Blue Photon.

23.     The disclosure to Blue Photon included delivery of eighteen actual cables (referred to as "LED Heads") and ten circuit boards (referred to as "Module Boards") from AST to Blue Photon pursuant to purchase order number 1433, dated February 20, 2018 (attached as Exhibit B).

24.     Since February 20, 2018, Blue Photon has refused to pay AST for the delivered LED Heads and Module Boards.

25.     On June 14, 2018, AST's counsel wrote to Dan Billings, President/CEO of Blue Photon, demanding immediate return of the LED Heads and Module Boards. A copy of that letter, sent by U.S. Certified Mail under Tracking number 70170190000090292539 is attached as Exhibit C. According to the records of the United States Postal Service, that letter was delivered to the addressee on June 18, 2018 at 2:06pm. A copy of the tracking information is attached as Exhibit D.

4

26.     In pursuit of settlement of its dispute with Blue Photon, AST instructed its counsel to communicate with counsel for Blue Photon, Will Meier, Esq., Parmenter Law in Muskegon, Michigan. Such communication, by First Class mail, by electronic mail, and by telephone continued from late June 2018 to August 10, 2018.

27.     Mr. Meier, on behalf of Blue Photon, represented that he would return the LED Heads and Module Boards to AST if AST would agree to remove certain housing components from the LED Heads and return those components to Blue Photon within one week of their receipt. On August 10, 2018, counsel for AST agreed and requested immediate return of the LED Heads and Module Boards. Electronic mail reflecting this agreement is attached as Exhibit E.

28.     Since August 10, 2018, counsel for Blue Photon has not responded to electronic mail messages or telephone messages from counsel for AST, and no LED Heads or Module Boards have been received by AST from Blue Photon.

29.     Blue Photon is in breach of the NDA for failing to return the LED Heads and Module Boards upon AST's demand.

29.     Blue Photon has used the AST Cable System.

30.     AST's LED Heads are distinctive, having strain relief elements that are translucent, and that are decoratively illuminated by a blue light source when they are connected to a power supply. This decorative illumination is a unique identifying feature of the AST LED Heads.

31.     At the web site https://www.bluephotongrip.com, a video is displayed clearing showing use of the LED Heads that are a part of the AST Cable System.

32.     Blue Photon intends to exhibit at the International Manufacturing Technology Show taking place at McCormick Place in Chicago, Illinois from September 10 through 15, 2018.

## Count I - Trade Secret Misappropriation and Use

33.     The averments of Paragraphs 1 - 32 above are incorporated as if fully set forth herein.

34.     On and after May 11, 2016, Blue Photon has misappropriated the AST Cable System trade secrets.

35.     On and after May 11, 2016, Blue Photon has, without authorization, used the AST Cable System trade secrets.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to:

1)     Temporarily and preliminarily enjoin continued possession of the AST Cable System trade secrets by Blue Photon (and its counsel) pursuant to 18 U.S.C. § 1836(b)(3)(A); and

2)     Permanently enjoin possession of the AST Cable System trade secrets by Blue Photon (and its counsel) pursuant to 18 U.S.C. § 1836(b)(3)(A); and

3)     Award Plaintiff damages pursuant to 18 U.S.C. § 1836(b)(3)(B); and

4)     Award Plaintiff exemplary damages of twice the actual damages pursuant to 18 U.S.C. § 1836(b)(3)(C); and

2)     Award Plaintiff costs of the action plus interest, attorney's fees, and such other relief as the Court believes is just.

### Count II - False Designation of Origin

36.    AST incorporates the allegations made in paragraphs 1 through 35 as if fully set forth herein.

37.    Blue Photon, by displaying AST's distinctive LED Heads on its own marketing and advertising outlets falsely designates the LED Heads as originating from Blue Photon, and not AST.

38.    The public use of AST's distinctive LED Heads by Blue Photon is likely to cause potential purchasers of Blue Photon's products or services to believe that there is an affiliation, connection, association, origin or sponsorship relationship between AST and Blue Photon where none exists.

39.    By displaying AST's distinctive LED Heads to generate initial interest in Blue Photon, and in thereafter directing potential customers to products belonging to Blue Photon, Blue Photon diverts sales revenue from AST and interferes with its business. Blue Photon's actions thus constitute a false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

40.    AST has been and will continue to be irreparably harmed by Blue Photon's actions. Unless Blue Photon is enjoined from continuing its unauthorized use of the AST's distinctive LED Heads and from falsely representing the actual origin of its goods and services, such irreparable harm will continue.

41.    By virtue of Blue Photon's unauthorized use of AST's distinctive LED Heads, AST is entitled to recover all of Blue Photon's profits attributable to such use, as well as damages sustained by AST and the costs of this action that result from Blue Photon's use of the

7

distinctive cable products. To the extent that Blue Photon's actions in this regard have been willful, AST is entitled to a trembling of those damages as well as an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiff respectfully requests this Honorable Court to:

1) Temporarily and preliminarily enjoin continued use of the AST Cable System trade secrets by Blue Photon; and

2) Permanently enjoin use of the AST Cable System trade secrets by Blue Photon; and

3) Award Plaintiff damages in the form of a reasonable royalty; and

2) Award Plaintiff costs of the action plus interest, attorney's fees, and such other relief as the Court believes is just.

## Count III – Breach of Contract

42.     AST incorporates the allegations made in paragraphs 1 through 41 as if fully set forth herein.

43.     Blue Photon entered into a valid contract with AST on April 6, 2016 (the NDA).

44.     AST demanded return of the AST Cable System Information disclosed to Blue Photon pursuant to the NDA on June 14, 2018.

45.     Blue Photon has not complied with AST's demand.

46.     Blue Photon has breached the NDA.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to:

1) Temporarily and preliminarily enjoin continued use of the AST Cable System trade secrets by Blue Photon; and

8

2)        Permanently enjoin use of the AST Cable System trade secrets by Blue

Photon; and

3)        Award Plaintiff damages in an amount to be shown at trial; and

2)        Award Plaintiff costs of the action plus interest, attorney's fees, and such

other relief as the Court believes is just.

Respectfully submitted,

Lawrence A. Husick

Dated: Sept. 7, 2018
Lawrence A. Husick, Esq.

P.O. Box 587
Southeastern, PA 19399-0587
(610) 296-8259
(610) 308-0514 (fax)

Lawrence A. Husick, Esq.
Co-Counsel for Plaintiff
lhusick@lwh-law.com

Adam G. Garson, Esq
Co-Counsel for Plaintiff
agarson@lwh-law.com

## CERTIFICATE OF SERVICE

I, Lawrence A. Husick, certify that the attached Complaint is being served upon Will Meier, Esq.,

Parmenter Law, 601 Terrace Street, Muskegon, MI 49440, counsel for Defendant Blue Photon, by

electronic mail transmission to will@parmenterlaw.com pursuant to a telephone conversation in

which Mr. Meier authorized such service on September 6, 2018 at 3:16pm EDT.

Dated:  07-SEP-2018

Lawrence A. Husick, Esq.
LIPTON, WEINBERGER & HUSICK
Co-Counsel for Plaintiff
Advanced Simulation Technology, Inc.

P.O. Box 587
Southeastern, PA 19399-0587
lhusick@lwh-law.com
610-296-8259

**EXHIBIT A**

## NON-DISCLOSURE AGREEMENT

THIS AGREEMENT is made and entered into as of this _6_ day of April, 2016, by and between Advanced Simulation Technology, Inc., hereinafter referred to as "Disclosor") and Blue Photon Technology & Workholding Systems LLC, (hereinafter referred to as "Disclosee").

### RECITALS

WHEREAS, Disclosor has developed certain Confidential Information with respect to adaptive positioning of a work piece for machining operations, which Confidential Information is the property of Disclosor.

WHEREAS, Disclosee desires to obtain information relating to Disclosor's Confidential Information for the purpose of development and application of the Confidential Information;

WHEREAS, Disclosor is willing to disclose the Confidential Information to Disclosee, but desires to maintain all rights in and control over the Confidential Information so disclosed to Disclosee, and to protect the confidentiality of the Confidential Information by preventing its unauthorized use and dissemination without Disclosor's prior consent.

NOW, THEREFORE, in consideration of the Confidential Information Disclosee will receive and intending to be bound, Disclosor and Disclosee hereby agree as follows:

**Section 1.  Confidential Information.**  For the purpose of this Agreement, the term "Confidential Information" shall mean information and materials related to adaptive positioning of a work piece for machining operations, including, without limitation, patent disclosures, patent applications, structures, computer readable or implementable code, know-how, models, techniques, processes, compositions, compounds, technical information, knowledge, data, ideas, discoveries, drawings, documents, records, formulas and other information, whether or not similar to the foregoing, which is related in any manner, directly or indirectly, to the design, manufacture, marketing or use of Disclosor's products and services.  Confidential Information includes such information disclosed orally or in writing or otherwise provided by Disclosor to Disclosee, or obtained or acquired by Disclosee through observation or examination of such information or materials, and includes synopses, descriptions, analysis or other information developed or prepared by Disclosee based upon Confidential Information provided by Disclosor.

**Section 2.  Confidentiality.**  Disclosee and all of its representatives, affiliates, agents and assignees shall preserve in trust as confidential and shall not use, directly or indirectly, or allow to be used, any Confidential Information except as necessary in connection with an agreement between Disclosee and Disclosor to which the Confidential Information pertains and shall not reveal, report, publish, transfer, disclose or permit disclosure of such Confidential Information to any person other than authorized employees or contractors of Disclosee who are bound by written agreements with Disclosee to similarly maintain such Confidential Information in confidence.  Disclosee hereby agrees to identify, upon request from Disclosor, those persons to whom such Confidential Information was disclosed.



Confidential Information in the possession of Disclosee remains the property of Discloser. Disclosee shall maintain all Confidential Information in Disclosee's possession either segregated from Disclosee's other information or in a manner in which the Confidential Information may be readily identified and segregated from Discloser's other information. Upon request by Discloser, Disclosee will return all Confidential Information to Discloser.

**Section 3.  Confidentiality Exceptions.**

Disclosee, and any and all of its representatives, affiliates, agents and assignees, shall be bound by the confidentiality obligations imposed by this Agreement with respect to the Confidential Information except to the extent that such Confidential Information:

(i)   is already known by Disclosee at the time of the disclosure by Discloser; or

(ii)   is a matter of public knowledge at the time of such disclosure, provided that such public knowledge did not occur through a violation of trade secret or other intellectual property right of Discloser or through a breach of an obligation of confidentiality to Discloser; or

(iii)   later becomes a matter of public knowledge after such disclosure to Disclosee by Discloser, provided that such public knowledge did not occur through a violation of trade secret or other intellectual property right of Discloser or through a breach of an obligation of confidentiality to Discloser; or

(iv)   is independently made available to the undersigned by a third party, provided the third party did not obtain the Confidential Information as a result of violation of a trade secret or other intellectual property right of Discloser or a breach of an obligation of confidentiality to Discloser.

**Section 4.  No License or Assignment of Rights.**  Nothing in this Agreement shall constitute a license or assignment of any patent rights, copyrights, trade secret rights, or trademark rights in the United States or any foreign country.

**Section 5.  Duration.**  Upon provision of Confidential Information to Disclosee by Discloser, the confidentiality obligations of Section 2 above shall attach and shall continue in effect until the occurrence of one of the events described in Section 3.

**Section 6.  Injunctive Relief.**  Disclosee hereby acknowledges and agrees that it would be difficult to fully compensate Discloser for damages resulting from the breach or threatened breach of this Agreement and, accordingly, that Discloser shall be entitled to temporary and injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions to enforce such provisions without the necessity of proving actual

damages and without the necessity of posting any bond or other undertaking in connection therewith. This provision with respect to injunctive relief shall not diminish Disclosor's right to claim and recover damages.

**Section 7. Severable Provisions**. The provisions of this Agreement are severable and if any one or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions, and any partially-unenforceable provisions to the extent enforceable, shall nevertheless be binding and enforceable.

**Section 8. Binding Agreement.** This Agreement shall inure to the benefit of and shall be binding upon Disclosee, its affiliates, successors and assigns.

**Section 9. Governing Law.** This Agreement shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania and may not be modified, except in writing by the parties hereto. Any actions brought to enforce or interpret this Agreement shall be brought only in a court of competent jurisdiction located in the Commonwealth of Pennsylvania.

**Section 10. Captions**. The section captions are inserted only as a matter of convenience and reference, and in no way define, limit or describe the scope of this Agreement or the intent of any provisions hereof.

**Section 11. Entire Agreement.** This Agreement contains the entire agreement of the parties relating to the subject matter hereof, and the parties hereto have made no agreements, representations or warranties relating to the subject matter of this Agreement that are not set forth herein. No modification of this Agreement shall be valid unless made in writing and signed by the parties hereto.

**Section 12. Notice.** Any note or demand required or permitted to be given hereunder shall be in writing and shall be deemed effective upon the personal delivery thereof or by facsimile transmission or, if mailed, forty-eight (48) hours after having been deposited in the United States mail, postage prepaid and addressed to the party to whom it is directed at the address set forth below:

|  |  |
|---|---|
| If to Disclosor: | Alvin Potter, President |
|  | Advanced Simulation Technology, Inc. |
|  | 200 Racoosin Drive, Suite 105 |
|  | Aston, PA 19014 |
| If to Disclosee: | Dan Billings |
|  | President/CEO |
|  | Blue Photon Technology & Workholding Systems LLC |
|  | 116 W. Colby St. Suite B1 |
|  | Whitehall, MI 49461 |



Either party may change the address to which such notices are to be addressed by giving the other party notice in the manner herein set forth.

**Section 13. Attorneys' Fees.** If legal action should be commenced to enforce the terms, covenants or conditions of this Agreement, the prevailing party shall be entitled to recover, in addition to money, damages and injunctive relief, the costs of suit, including attorneys' fees actually incurred, whether or not the action proceeds to judgment.

**Section 14. Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

DISCLOSOR

Advanced Simulation Technology, Inc

By: _Alvin A. Potter, PRESIDENT_
(Name and title)

DISCLOSEE

By: _Dan Billings/Presidet/CEO_
(Name and title)

-4-

**EXHIBIT B**



# Purchase Order

| Date | P.O. No. |
| --- | --- |
| 2/20/2018 | 1433 |

Blue Photon

1002 Industrial Park Dr.
Shelby, MI 49455

**Ship To**

Blue Photon Technology & Workholding Sys
1002 Industrial Park Dr.
Shelby, MI 49455

**Vendor**

Advanced Simulation Technology, Inc.
200 Racoosin Drive, Unit 105
Aston PA  19014

| Due Date |
| --- |
| 3/13/2018 |

| Item | MPN | Description | Qty | Rate | U/M | Amount |
| --- | --- | --- | --- | --- | --- | --- |
| 51801 | | LED Head, Small | 18 | 325.00 | EA | 5,850.00 |
| 61300-1 | | Module Board | 10 | 270.00 | EA | 2,700.00 |
| R&D Services | | Development cost for physical cycle button | 40 | 141.00 | | 5,640.00 |

| | **Total** | $14,190.00 |
| --- | --- | --- |

**EXHIBIT C**

## Lipton, Weinberger & Husick

REGISTERED PATENT ATTORNEYS
INTELLECTUAL PROPERTY
AND
TECHNOLOGICAL LAW

LAWRENCE A. HUSICK
LAURENCE A. WEINBERGER
ADAM G. GARSON†
ASH TANKHA^
ROBERT J. YARBROUGH△

ROBERT S. LIPTON (1941-2011)

P.O. BOX 587
SOUTHEASTERN, PENNSYLVANIA
19399-0587  USA

http://www.LWH-Law.com

DIRECT FOR LAWRENCE A. HUSICK:
610-296-8259 TELEPHONE
**610-514-0388** FACSIMILE
LHusick@LWH-law.com

June 14, 2018
Sent via registered mail, return receipt requested.

Dan Billings
President/CEO
Blue Photon Technology & Workholding Systems LLC
1002 Industrial Park Dr.
Shelby, MI 49455

   Re:  Advanced Simulation Technology, Inc. UV LED System

Dear Mr. Billings:

  This firm represents Advanced Simulation Technology, Inc. ("AST") in connection with its intellectual property matters. Our client has asked that we contact you with respect to its proprietary ultraviolet LED system.

  While AST remains hopeful that Blue Photon will see the many benefits of continuing to work together on the UV LED system, should Blue Photon continue in its determination to cease the relationship, there are certain obligations undertaken by Blue Photon that must be promptly fulfilled. Specifically, all disclosures made by AST to Blue Photon, and all materials supplied by AST to Blue Photon are governed by AST's Nondisclosure Agreement with Blue Photon ("NDA") dated April 6, 2016 (copy enclosed.)

  As required under the terms of the NDA, Blue Photon is to immediately return all hardware, and all descriptions, specifications, depictions and representations thereof supplied or created pursuant to Blue Photon Purchase Order #1433, dated February 20, 2018. AST acknowledges that it has received three each, of item 51801 (LED Head, Small) from Blue Photon.  Blue Photon is thus required to return the remaining fifteen (15) item 51801 (LED Head, Small) and ten (10) item 61300-1 (Module Board).  To avoid confu-

† Not Admitted USPTO
˙ Admitted South Carolina
△ Admitted Pennsylvania and Kentucky

sion, we have listed the serial numbers of the items to be returned as Exhibit A to this letter. You may ship all items to AST at its expense using AST's UPS account 242-WY5. AST will remove and return the aluminum magnetic housings to Blue Photon.

We wish to remind you that any and all information disclosed to Blue Photon by AST, and any items of hardware provided to Blue Photon by AST are subject to the terms of the NDA, as are any documents or items created by Blue Photon on the basis of information disclosed by AST. Accordingly, nothing disclosed to Blue Photon or supplied to it by AST may be transferred or disclosed to any third party without AST's expressed written permission. If any disclosures to third parties have already taken place, AST requires that Blue Photon immediately identify those persons to whom its Confidential Information has been disclosed.

Finally, we remind you that there is no license or assignment of any rights of AST to Blue Photon, and that in no event may Blue Photon use any Confidential Information in future work concerning any ultraviolet LED system. This includes, but is not limited to such items as video and photographic depictions of AST's products, such as that appearing at https://www.bluephotongrip.com.

We look forward to your cooperation in this matter. Kindly confirm in writing within five business days that Blue Photon will comply with all of its obligations under the NDA, as set forth herein. AST reserves all rights under the NDA, and under relevant state and federal laws.

Very truly yours,

**Lipton, Weinberger & Husick**

Lawrence A. Husick

Cc: Chip Potter, AST
Enclosures: Exhibit A, Serial Numbers; NDA

**Exhibit A - Serial Numbers of Items to be Returned to AST by Blue Photon**

**LED Leads**

| | |
|---|---|
| 0a076685 | 0a07edd6 |
| 0a076734 | |
| | 0a0805df |
| 0a07a290 | 0a0809a7 |
| 0a07bcce | 0a081688 |
| 0a07d590 | |
| 0a07e61e | 0a083554 |
| 0a07e945 | 0a084e38 |
| 0a07eaa0 | 0a085b8a |

**Module Boards**

| | |
|---|---|
| 2c03ef89 | 50c94c25 |
| 4acc2d17 | 158ee1e0 |
| 6eae2414 | 908c267c |
| 35e9451e | b1b1c5f2 |
| 41adb185 | c9c1176d |

**EXHIBIT D**

# USPS Tracking®

**FAQs** ❯ (http://faq.usps.com/?articleId=220900)

## Track Another Package  +

**Tracking Number:** 70170190000090292539

Remove ✕

**Expected Delivery by**

# MONDAY
# 18 JUNE 2018 ⓘ
by
**8:00pm** ⓘ

## ⊘ **Delivered**

June 18, 2018 at 2:06 pm
Delivered, Left with Individual
SHELBY, MI 49455

**Get Updates** ⌄

---

**Text & Email Updates**                                                    ⌄

---

**Tracking History**                                                          ⌃

**June 18, 2018, 2:06 pm**
Delivered, Left with Individual
SHELBY, MI 49455
Your item was delivered to an individual at the address at 2:06 pm on June 18, 2018
in SHELBY, MI 49455.

**June 18, 2018**
In Transit to Next Facility

**June 17, 2018, 10:29 pm**
Departed USPS Regional Destination Facility
GRAND RAPIDS MI DISTRIBUTION CENTER ANNEX

**June 17, 2018**
In Transit to Next Facility

**June 16, 2018, 8:45 am**
Arrived at USPS Regional Destination Facility
GRAND RAPIDS MI DISTRIBUTION CENTER ANNEX

**June 15, 2018, 9:29 am**
Departed USPS Regional Facility
PHILADELPHIA PA DISTRIBUTION CENTER

**June 14, 2018, 10:14 pm**
Arrived at USPS Regional Origin Facility
PHILADELPHIA PA DISTRIBUTION CENTER

**June 14, 2018, 3:09 pm**
Departed Post Office
SOUTHEASTERN, PA 19399

**June 14, 2018, 1:45 pm**
USPS in possession of item
SOUTHEASTERN, PA 19399

**Product Information**                                          ⌄

See Less ⌃

**EXHIBIT E**



From: **lawhusick** lawrence@lawhusick.com
Subject: Re: Blue Photon - AST
Date: August 10, 2018 at 12:04 PM
To: Will Meier Will@parmenterlaw.com
Cc: Chip Potter chip.potter@astinc.us

Dear Will:

Because reading the serial numbers requires using software connected to the cable, I propose the following...

Please return the equipment directly to AST. We will verify the serial numbers and provide a report confirming receipt of each item. AST will remove the housings and return them to Blue Photon within a week of receipt.

At the same time, I will provide a proposed agreement that will define rights moving forward, along the lines that you have suggested.

It is our hope that we will be able to wrap things up between the companies before the International Manufacturing Technology Show in September.

Please let me know if this is acceptable to your client. If so, please provide a tracking number for the shipment when available.

Thank you and have a good weekend.

Lawrence Husick

On Aug 9, 2018, at 1:34 PM, Will Meier <Will@parmenterlaw.com> wrote:

Lawrence,

Were able to confirm that I have all of the items provided? If you can confirm that you will return the Blue Photon Housings within a week, I can send out the package.

# William J. Meier
Partner

<image001.jpg><image002.jpg>
Direct P        (231) 722-5409
Direct F        (231) 722-5509
Email:          Will@parmenterlaw.com
Visit:          601 Terrace Street, Muskegon, MI 49440
Mail:           PO Box 786, Muskegon, MI 49443-0786
Web:            www.parmenterlaw.com
Find us on Facebook - LinkedIn
If you have received this communication in error, please notify us by email and delete the material. Thank you

**From:** Will Meier
**Sent:** Tuesday, August 07, 2018 4:32 PM
**To:** 'lawhusick'
**Subject:** Blue Photon - AST

Lawrence,

I have discussed your letter I received today with my client and we would make the following points:

1.  My client has no other AST materials and has never had any additional materials.

    a.  I see 15 LED Heads and 11 Module Board (1 of which is a demo) in the photos I sent you. 8 of the module boards are in the silver packets and I did not open those.

    b.  Is there something I am missing here?

2.  I can forward to you the items I do have, but we will first need a time frame for return to my client the LED head housings. They are boxed and ready to go.

3.  My client does not have any physical written materials and all electronic materials have been deleted from my client's records.

4.  Much of the technology Blue Photon provided was publically available, but not all. AST benefitted from the information provided by Blue Photon. Blue Photon has not. Blue Photon is looking for clarification as to what it can do in the future in connection with LED lights and the cords. In particular, what is the scope of the IP claimed by AST.

    a.  Blue Photon will not make use of the information provided by AST as it is of no value. It does not come close to meeting the specifications required by Blue Photon. As we discussed, it was at the time when AST obtained a product useful to themselves that they needed to formalize an agreement with Blue Photon to develop a product that would be useful to Blue Photon.

5.  I disagree with your contention that the NDA has been violated. Blue Photon has not used or disclosed any confidential information.

I will out of the office tomorrow for most of the day tomorrow but will have decent access to email. I will be in most of Thursday and Friday until around noon.

## William J. Meier
Partner

<image001.jpg><image002.jpg>

Direct P:    (231) 722-5409
Direct F:    (231) 722-5509
Email:    Will@parmenterlaw.com
Visit:    601 Terrace Street, Muskegon, MI 49440
Mail:    PO Box 786, Muskegon, MI 49443-0786
Web:    www.parmenterlaw.com

Find us on Facebook - LinkedIn

If you have received this communication in error, please notify us by email and delete the material. Thank you

*Lawrence A. Husick*
**LIPTON, WEINBERGER & HUSICK**
*Intellectual Property and Technological Law*

*Lawrence@LWH-Law.com*
*http://www.LWH-Law.com*

*P.O. Box 587*
*Southeastern, PA 19399-0587*

*Voice +1 (610) 296-8259*
*Fax +1 (610) 514-0388*
*IM/Skype: LawHusick*

*"It is, in fact, nothing short of a miracle that the modern methods of instruction have not yet entirely strangled the holy curiosity of inquiry."*
*- Albert Einstein (1879-1955) - Autobiographical Notes*

Albert Einstein (1879-1955) - Autobiographical Notes

*********************************************************************

*This electronic message transmission contains information from the law firm of Lipton, Weinberger & Husick which may be confidential or privileged. It has not been, nor will it be sent by alternate means. Recipients should not file copies of this e-mail with publicly accessible records. The information is intended to be for the use of the individual(s) named above. If you are not the intended recipient, please be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. This message and any attachments thereto are being sent with a reasonable expectation of privacy in their transmission and storage. If you are an agent of any government, you must serve a warrant on the sender prior to accessing the content hereof. Failure to do so will result in a civil suit brought against you in your non-official capacity for invasion of privacy and for infringement of the sender's copyrights in and to the content. The typewritten signature included with this e-mail is not an electronic signature within the meaning of the Electronic Signatures in Global and National Commerce Act or any other law of similar import, including without limitation, the Uniform Electronic Transactions Act, as the same may be enacted in any jurisdiction.*

*To ensure compliance with requirements imposed by U.S. Treasury Regulations, we inform you that any U.S. tax advice that may be contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein, so you had best just ignore it, as if we had never said it, or you could get in really big trouble.*

*To any law enforcement agents, military personnel, or representatives of the United States in any capacity reading my email: please consider whether defending the US Constitution against all enemies, foreign or domestic requires you to follow Snowden's example.*

*If you have received this electronic transmission in error, please notify us by electronic mail (lhusick@LWH-law.com) immediately, before we get in really big trouble. If you fail to be intimidated by this notice, we will get angry, stamp our feet, and hold our breath until we turn blue. Thank you.*
*********************************************************************
*To guarantee that you're not caught by our SPAM filter,*
*please put **XYZZY** at the end of your subject line.*
*********************************************************************

*© 2004-2016 Lawrence A. Husick. All Rights Reserved.*
*(Official-Looking Notice V2.576587909ae73 - AntiNSA Version)*